# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| VALDEZ N. MAXWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:09-CV-008-PPS |
| | ) | |
| SOUTH BEND WORK RELEASE CENTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Valdez Maxwell, who is disabled by virtue of a knee injury, complains that the Indiana state prison where he used to be incarcerated, and a work-release program that the prison operates in South Bend, Indiana, wrongfully excluded him from the work-release program because of his disability. Maxwell seeks damages and injunctive relief for these actions against the work-release program, defendant South Bend Work Release Center, now known as the South Bend Community Re-entry Center ("SBCRC"), and Edwin G. Buss, Commissioner of the Indiana Department of Correction ("IDOC"), who Maxwell has sued in his official capacity only.[1]

Maxwell asserts claims against Defendants for violation of Title II of the Americans with Disabilities Act, and for disability-based discrimination under Section 504 of the Rehabilitation Act of 1973 [DE 132]. He also asserts a Section 1983 claim against Defendants for violations of his rights under the Eighth and Fourteenth Amendments [*Id.*]. Defendants seek summary

---

[1] It's not entirely clear why the parties have chosen to treat IDOC and SBCRC as separate entities. For the sake of convenience, this opinion follows the parties' lead in drawing this distinction. But the Court makes no finding here as to whether SBCRC is in fact a separate legal entity from IDOC itself.

judgment as to all claims [DE 184]. For the reasons discussed below, their motion for summary judgment is **GRANTED**.[2]

## BACKGROUND

Maxwell is no longer incarcerated, but in 2007, during the time of the events giving rise to this lawsuit, he was within IDOC's custody [DE 132, ¶¶ 8-10]. During his incarceration, Maxwell participated in SBCRC's work-release program, which is operated by IDOC as a community re-entry program for prisoners in the IDOC system [DE 186-1, ¶¶ 1-2]. IDOC prisoners are eligible to participate in the program so long as they are approved by the State Director of Classification [*Id*., ¶¶ 5-7]. Once approved, SBCRC designates potential employers within the community where participants are permitted to apply for work [*Id*., ¶¶ 30-32]. Imperial Stamping, formerly a named defendant in this case, is one such employer [*Id*., ¶ 35].

Maxwell was accepted into SBCRC's work-release program from March 30, 2007 through May 18, 2007 [*Id*., ¶ 46]. During this period, SBCRC referred Maxwell to Imperial as a potential employer [*Id*., ¶ 66]. Maxwell alleges that Imperial unlawfully refused to hire him because of his disability, which limits his ability to walk and stand [DE 132, ¶¶ 9 & 17]. In particular, Maxwell alleges that a supervisor at Imperial called him a "crippled piece of shit," and told SBCRC that Maxwell could not perform the assigned work, and that Imperial had no positions available for him [*Id*., ¶ 17].

---

[2] Maxwell, in his response and in his motion to strike [DE 193], asks me to strike Defendants' motion for summary judgment on the ground of alleged violations of L.R. 56.1's formal requirements for the movant's statement of material facts. After inspecting Defendants' statement of facts – which Defendants supply, as the local rule permits, in an appendix to their opening brief [DE 186-1] – I fail to see the alleged deficiencies. Contrary to Maxwell's assertion, the facts are accompanied by "appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence." L.R. 56.1(a). So the motion to strike is denied.

2

Maxwell further alleges that, after Imperial refused to hire him, IDOC removed him from the work-release program and sent him to an IDOC prison facility in Westville, Indiana [*Id.*, ¶ 18]. Maxwell contends that IDOC took these actions against him because he complained about his experience at Imperial, and about IDOC's treatment of him as a disabled prisoner [*Id.*, ¶¶ 18-19]. Defendants present evidence that Maxwell was removed from the work release program, not because of his disability, but for violating the program's rules [DE 186-1, ¶¶ 74-85]. Notably, in May 2007, a hearing took place before the SBCRC's Conduct Adjustment Board ("CAB"). At issue before the CAB was not just the above-described incident where Maxwell says he was turned away by Imperial, but an earlier, April 2007, incident—which Maxwell fails to address—in which Maxwell told SBCRC personnel that he refused to work at Imperial because he was "an educated person and doesn't have to work in a factory" [*Id.*, ¶¶ 54 & 66]. The CAB found that Maxwell had violated SBCRC rules by refusing to work without a sufficient excuse [*Id.*, ¶¶ 74, 78 & 80]. SBCRC's superintendent, Gregory Cress, later denied Maxwell's appeal of the CAB's finding, and Maxwell was transferred to prison for violating the program's rules [*Id.*, ¶¶ 80-82].

Defendants have also presented evidence that (1) the CAB asked Maxwell on three occasions to provide documentation regarding the physical limitations that supposedly prevented him from working, but Maxwell told the CAB he had nothing to provide [*Id.*, ¶ 78]; (2) the CAB was unable to locate any orders for medical restrictions in Maxwell's file [*Id.*, ¶ 79]; and (3) Maxwell never requested any type of disability accommodation from superintendent Cress; Scott Hatt, Maxwell's SBCRC caseworker; or, to their knowledge, from anyone at SBCRC [*Id.*, ¶¶ 50, 68 & 73].

Defendants contend that they are immune from each of Maxwell's claims. They also argue that Maxwell's discrimination claims under Title II of the ADA and the Rehabilitation Act fail on the merits. I agree that Defendants are immune from Maxwell's Section 1983 claim. And although they are not immune from the Rehabilitation Act claim, that claim fails nonetheless because of Maxwell's inability to satisfy the Act's causation requirement. And his Title II claim fails for substantially the same reason, though, as we shall see, those claims have different causation standards. Lastly, because the Title II claim fails on its merits, I need not reach Defendants' immunity defense to that claim.

## DISCUSSION

### I. Maxwell's Section 1983 Claim

Maxwell's Section 1983 claim is based on his assertion that Defendants violated his rights under the Eighth and Fourteenth Amendments by imposing cruel and unusual punishment [DE 132, ¶ 28]. The Eleventh Amendment generally precludes a citizen from suing a state or one of its agencies or departments for money damages in federal court. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

SBCRC is a state agency for purposes of Eleventh Amendment immunity. Indeed, because it is a work-release facility, SBCRC is essentially a prison, albeit with fewer restrictions, but which IDOC nonetheless operates [DE 186-1, ¶ 1]. *See DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992). And of course IDOC is a state agency. *Wynn*, 251 F.3d at 592; *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 735 (7th Cir. 2000). So I will also treat SBCRC as a state agency for purposes of analyzing its Eleventh Amendment immunity claim.

There are three exceptions to Eleventh Amendment immunity: (1) suits against state

4

officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment; (2) individuals may sue a state directly if Congress has abrogated the state's immunity from suit; and (3) individuals may sue the state if the state waived its sovereign immunity and consented to suit in federal court. *MCI Telecommunications Corp. v. Ill. Commerce Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999) (citing *Marie O. v. Edgar*, 131 F.3d 610 (7th Cir. 1997)).

Indiana has not consented to this suit. Nor did Congress abrogate the State's immunity through the enactment of Section 1983. *See Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). So Maxwell's Section 1983 claim against SBCRC for money damages is barred by the Eleventh Amendment. *See Wynn*, 251 F.3d at 592 (finding that IDOC is a state agency and thus is immune from suit in federal court for money damages).

Buss (in his official capacity and thus IDOC) is also immune from Maxwell's Section 1983 claim. The Eleventh Amendment immunity bar remains in effect where, as here, state officials are sued for damages in their official capacities. *Wynn*, 251 F.3d at 592 (barring claims against corrections officials in their official capacities). Accordingly, the Eleventh Amendment bars Maxwell's Section 1983 claim for damages against Buss, who Maxwell sues in his official capacity only. *Id.*

This only leaves Maxwell's Section 1983 official capacity claim against Buss for prospective equitable relief. Under *Ex parte Young*, 209 U.S. 123 (1908), "a private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law." *Ameritech Corp. v. McCann*, 297 F.3d 582, 585-86 (7th Cir. 2002) (quoting *Dean Foods Co. v. Brancel*, 187 F.3d 609, 613 (7th Cir. 1999)). But the *Ex parte Young* doctrine is inapplicable here because Maxwell is no longer incarcerated.

A plaintiff bringing a claim under Section 1983 has standing to seek injunctive relief "only if he has a personal stake in the outcome of the litigation." *Stewart v. McGinnis*, 5 F.3d 1031, 1037 (7th Cir. 1993) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)); *see also Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000). Maxwell has not established the requisite personal stake in the outcome of this litigation because he is no longer a participant in SBCRC's work-release program and no longer incarcerated within the IDOC system. Nor does Maxwell provide any indication that he will be returned to IDOC's custody at any time in the near future. Thus, he is in no immediate threat of harm from official conduct there. Accordingly, Maxwell lacks standing to pursue equitable relief against IDOC under Section 1983. *Cf. Stewart*, 5 F.3d at 1037-38 (inmate not entitled to equitable relief where he was no longer housed in prison where alleged violations had occurred).

## II. Sovereign Immunity Under Title II of the ADA and the Rehabilitation Act

Maxwell claims that he was discriminated against on the basis of his disability in violation of Title II of the ADA and the Rehabilitation Act. In addition to their merits-based challenge to Maxwell's Title II and Rehabilitation Act claims (discussed below in the next section), Defendants argue that they are immune from those claims under the Eleventh Amendment. As shown below, they are incorrect on the immunity issue under the Rehabilitation Act. As for the Title II claim, immunity is an issue that I should refrain from deciding.

Here's why: under *U.S. v. Georgia*, 546 U.S. 151 (2006), the Supreme Court set forth a step-by-step analysis for Title II claims that appears to require lower courts to determine whether there has been a Title II violation *before* proceeding to address immunity issues. *Georgia* explained that lower courts should "determine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated

the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 546 U.S. at 159. *U.S. v. Georgia* came on the heels of *Tennessee v. Lane*, 541 U.S. 509 (2004), where the Court engaged in a full-scale Eleventh Amendment analysis of whether Congress validly abrogated sovereign immunity under Title II of the ADA in a narrow class of cases involving the fundamental right of access to the courts. *Id.* at 531. But *Georgia* counseled against jumping to the Eleventh Amendment analysis if the case can be decided on the grounds that Title II was not violated in the first place.

This is really just another way of saying that courts should avoid constitutional issues when a case can be decided on non-constitutional grounds. *See, e.g., Welsh v. Boy Scouts of Am.,* 993 F.2d 1267, 1277 (7th Cir. 1993) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the court will decide only the latter."); *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 835 F.2d 1207, 1210 (7th Cir. 1987).

At least two federal courts of appeals have interpreted *Georgia* as prohibiting lower courts from addressing the validity of Title II's abrogation of state sovereign immunity without first evaluating the merits of a plaintiff's Title II claim. *See Bowers v. NCAA*, 475 F.3d 524, 553 (3d Cir. 2007); *Buchanan v. Maine*, 469 F.3d 158, 172–73 (1st Cir. 2006); *see also Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (following the *Georgia* approach, but declining to decide whether *Georgia* prohibits courts from deciding the immunity issue before determining whether a Title II claim has been stated).

7

Following *Georgia,* I will refrain from addressing the Eleventh Amendment immunity issue and will instead address the merits of Maxwell's Title II claim. And as we will see in a moment, the claim cannot proceed, so there is no need to undertake the knotty constitutional analysis that would otherwise be necessary under *Tennessee v. Lane*.

The Eleventh Amendment immunity analysis is different under the Rehabilitation Act. There is no Eleventh Amendment bar against Maxwell pursuing his Rehabilitation Act claim because, pursuant to Section 504 of the Rehabilitation Act, IDOC waived its immunity when it accepted federal financial assistance. *See* 29 U.S.C. § 794(a). Section 504 "is a condition on the receipt of federal funds." *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000); *see also Bruggeman ex rel. Bruggeman v. Blagojevich,* 324 F.3d 906, 912 (7th Cir. 2003). That is, Section 504 does not exist as an independent prohibition on discrimination; rather, it is triggered only when the state decides to accept federal funds for particular programs.

42 U.S.C. § 2000d-7 further conditions a state's receipt of federal money on its waiver of Eleventh Amendment immunity to actions under Section 504, specifically providing that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a)(1). As the Supreme Court has recently noted, "[Section 2000d-7] expressly waives state sovereign immunity for violations of 'section 504 of the Rehabilitation Act . . . *by recipients of Federal financial assistance.*'" *Sossamon v. Texas*, 131 S. Ct. 1651, 1662 (2011) (emphasis in original) (quoting § 2000d-7(a)(1)); *see also Bruggeman*, 324 F.3d at 912.

IDOC does not deny that it receives federal funds. So Maxwell's Rehabilitation Act claim against Buss in his official capacity, which is equivalent to a suit against IDOC itself, *see Ky. v. Graham*, 473 U.S. 159, 166 (1985); *Wynn*, 251 F.3d at 592, is not barred by the Eleventh Amendment.

SBCRC is also subject to Maxwell's Rehabilitation Act claim, based on IDOC's receipt of federal funding. SBCRC—a program operated by IDOC—admits that its funding comes from IDOC, but denies that it received federal funds during the time period in which Maxwell was a participant in the work-release program [DE 185-1, ¶¶ 5 & 50]. But even if SBCRC did not receive federal funds during this period, it is still subject to suit under the Rehabilitation Act.

The Rehabilitation Act makes it unlawful for any "program or activity" receiving federal financial assistance to discriminate against the handicapped. 29 U.S.C. § 794. Section 794, as amended in 1988, defines "program or activity" as "all the operations" of "a department, agency, special purpose district, or other instrumentality of a State or of a local government" that receives or dispenses federal financial assistance. 29 U.S.C. § 794(b)(1)(A) & (B); *see also Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991).

As the Seventh Circuit observed in *Schroeder*, the 1988 amendment expanded the definition of "program or activity" from a specific program or specific activity to "'all the operations' of the university or hospital or other institution that conducted the program or activity." *Id.* (citation omitted). For example, "[i]f federal health assistance is extended to a part of a state health department, the entire health department would be covered in all of its operations." *Id.* (quoting S. Rep. No. 64, 100th Cong., 2d Sess. 16 (1988), U.S. Code Cong. & Admin. News 1988).

SBCRC is a "program or activity" within the meaning of the Rehabilitation Act because § 794(b)(1) defines that term as embracing "all the operations" of a department or agency that receives federal financial assistance. 29 U.S.C. § 794(b)(1)(A). The Defendants concede that SBCRC is "a facility which operates as a program of [IDOC]" [DE 186-1, ¶ 1]. So SBCRC—an operation or program of IDOC, which receives federal funding— is covered under the Rehabilitation Act and is thus not immune from Maxwell's Rehabilitation Act claim.

To summarize: the Supreme Court in *Georgia* requires lower courts to consider the merits of an ADA Title II claim before addressing the immunity issue. And the Defendants do not have Eleventh Amendment immunity for the Rehabilitation Act claim because IDOC accepted federal financial assistance and in doing so waived its immunity defense. So I will now proceed to the merits of both claims.

### III. The Merits of the Rehabilitation Act and Title II Claims

Defendants contend that Maxwell's discrimination claim under the Rehabilitation Act fails as a matter of law, arguing in part that Maxwell cannot satisfy the Act's causation requirement.[3] And Defendants' merits-based challenge to the Title II claim rests solely on their contention that Maxwell fails to satisfy Title II's causation requirement. I agree that Maxwell fails to establish a genuine dispute as to causation for either claim. Title II's "but-for" causation

---

[3] Defendants also contend that Maxwell failed to exhaust his administrative remedies. But the Seventh Circuit has held that the Rehabilitation Act generally does not require the exhaustion of administrative remedies for non-federal employees. *Adashunas v. Negley*, 626 F.2d 600, 603 (7th Cir. 1980); *see also Peterson v. Univ. of Wisconsin Bd. of Regents*, 818 F. Supp. 1276, 1278-79 (W.D. Wis. 1993). And although the Seventh Circuit has not squarely addressed the issue, *see Staats v. County of Sawyer*, 220 F.3d 511, 518 (7th Cir. 2000), lower courts have consistently found that Title II of the ADA does not require the exhaustion of administrative remedies. *See, e.g., Patterson . Ill. Dept. of Corrections*, 35 F. Supp. 2d 1103, 1106 (C.D. Ill. 1999); *Dertz v. City of Chicago*, 912 F. Supp. 319, 324 (N.D. Ill. 1995). I need not decide the issue inasmuch as Maxwell's claim fails on the merits in any event.

requirement is less demanding than the Rehabilitation Act's "sole cause" requirement. So I begin with an analysis of why the Title II claim fails, which will suffice to dispose of the Rehabilitation Act claim as well.

For Maxwell to prove a violation of Title II, he must show: "(1) that he is a 'qualified individual with a disability,' (2) that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and (3) that the denial or discrimination was 'by reason of' his disability." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir.1996) (quoting 42 U.S.C. § 12132); *see also Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004); *Brettler v. Purdue Univ.*, 408 F. Supp. 2d 640, 662 (N.D. Ind. 2006).

Defendants argue that this claim fails because Maxwell cannot show that Defendants removed him from the work release program "by reason of" his alleged disability. To make this showing, Maxwell must satisfy a but-for causation standard, rather than the weaker mixed-motive standard applicable to Title VII claims. *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962-63 (7th Cir. 2010) ("given the lack of a provision in the ADA recognizing mixed-motive claims, such claims do not entitle a plaintiff to relief for disability discrimination"). Thus, proof that Maxwell's disability "was a motivating factor, but not a determinative factor" in Defendants' decision is insufficient under the ADA. *Id.* at 961;[4] *see also Wisconsin Cmty.*

---

[4] *Serwatka* dealt with claims under Title I of the ADA and the ADEA, but its analysis of the causation standard under those claims applies equally to Maxwell's Title II claim. In finding that a but-for standard applied to the claims before it, *Serwatka* relied on the Supreme Court's holding in *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2350 (2009), that the phrase "because of" indicates a but-for standard of causation. *Serwatka*, 591 F.3d at 961-62. And, as *Gross* recognized, the phrase "by reason of" – which is identical to the causation language in Title II – has the same meaning as "because of" and "based on," all of which indicate a but-for causal relationship. *Gross*, 129 S. Ct. at 2350.

*Servs., Inc. v. City of Milwaukee,* 465 F.3d 737, 754 (7th Cir. 2006) ("but for" causation standard applies in ADA cases) In other words, Maxwell must show that his disability was a necessary condition for his removal from the program – *i.e.*, that Defendants would not have removed him from the program had he not been disabled.[5] *U.S. v. Hatfield*, 591 F.3d 945, 948 (7th Cir. 2010) (defining a "but-for" cause as a "necessary condition").

Maxwell, however, fails to present evidence sufficient to permit a reasonable jury to draw this conclusion. Maxwell presents evidence, in the form of excerpted portions of his affidavit testimony [DE 155-1], that when SBCRC assigned him to Imperial as a potential employer, the supervisor there, Tom Hayden, told Maxwell he was angered that SBCRC had sent him "a crippled piece of shit" [DE 192 at 12, ¶¶ 4-6]; that when Maxwell requested a task he could perform given the limits on his ability to stand for long periods of time, Hayden refused, stating that Imperial had no use for Maxwell, and ordering him to leave the facility [*id.*]; that Defendants subsequently removed Maxwell from the work-release program based on a report from Imperial that Maxwell had refused to perform a work assignment there [*id.*, ¶ 7]; that Hayden, in Maxwell's presence, told an SBCRC employee via telephone that Maxwell could not perform the assigned work and that Imperial did not wish to assign alternative work to him [*id.*, ¶ 6]; and that IDOC did not respond to Maxwell's opposition to Imperial's report, or find alternative work assignments for him [*id.*, ¶¶ 7-10].

This testimony may provide evidence that *Imperial* denied work to Maxwell because of his disability. But it provides scant factual support for Maxwell's claim that *Defendants* would

---

[5] Congress amended the ADA, with amendments taking effect on Jan. 1, 2009, well after Maxwell's removal from the work release program. *Serwatka*, 591 F.3d at 962 n.1. Whether those amendments changed the "but for" causation requirement is an open question, but immaterial in cases arising out of conduct prior to the effective date of the amendments. *Id.*

12

not have removed him from the work-release program but for his disability. And Maxwell points to no evidence whatsoever that Imperial (or its supervisor Hayden) were responsible for Defendants' decision to remove Maxwell from the work-release program, or, conversely, that Defendants had anything to do with Imperial's decision to turn Maxwell away.

More important, Defendants present undisputed evidence that Maxwell was removed from the work release program, not because of his disability, but for violating the program's rules [DE 186-1, ¶¶ 74-85]. Notably, in May 2007, a hearing took place before the SBCRC's Conduct Adjustment Board ("CAB"). At issue before the CAB was not just the above-described incident where Maxwell says he was turned away by Imperial, but an earlier, April 2007, incident—which Maxwell fails to address—in which Maxwell told SBCRC personnel that he refused to work at Imperial because he was "an educated person and doesn't have to work in a factory" [*Id.*, ¶¶ 54 & 66]. The CAB found that Maxwell had violated SBCRC rules by refusing to work without a sufficient excuse [*Id.*, ¶¶ 74, 78 & 80]. SBCRC's superintendent, Gregory Cress, later denied Maxwell's appeal of the CAB's finding, and Maxwell was transferred to prison for violating the program's rules [*Id.*, ¶¶ 80-82].

Moreover, even if Maxwell's disability did prevent him from working at Imperial, Maxwell fails to rebut Defendants' evidence that SBCRC had no evidence of this when it determined that Maxwell should be transferred out of the program. In particular, Defendants present undisputed evidence that (1) the CAB asked Maxwell on three occasions to provide documentation regarding the physical limitations that supposedly prevented him from working, but Maxwell told the CAB he had nothing to provide [*Id.*, ¶ 78]; (2) the CAB was unable to locate any orders for medical restrictions in Maxwell's file [*Id.*, ¶ 79]; and (3) Maxwell never requested any type of disability accommodation from superintendent Cress; Scott Hatt,

13

Maxwell's SBCRC caseworker; or, to their knowledge, from anyone at SBCRC [*Id*., ¶¶ 50, 68 &73].

Given Maxwell's failure to rebut Defendants' evidence that he was removed from the work-release program following an administrative finding that he had violated program rules, that SBCRC was not even aware that Maxwell required disability accommodations, and that Maxwell told the CAB he had no documentation of his alleged disability, no reasonable jury could find that Maxwell would have remained in the program had he not been disabled. As far as this record indicates, SBCRC would have removed a non-disabled prisoner for similar rules violations. Accordingly, Defendants are entitled to summary judgment on Maxwell's Title II claim.

As I noted above, because Maxwell's Title II claim fails on the merits, I need not resolve Defendants' Eleventh Amendment defense to this claim. *See Buchanan*, 469 F.3d at 172–73; *see also Hale*, 642 F.3d at 498 ("resolution of constitutional issues . . . is unnecessary unless and until [plaintiff] has stated a violation of Title II.").

Maxwell's inability to satisfy Title II's causation requirement necessarily means that he cannot satisfy the Rehabilitation Act's more stringent causation requirement. To establish disability-based discrimination under this Act, Maxwell must prove that he was discriminated against "solely by reason of [his] handicap." *Grzan v. Charter Hosp. of N.W. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997); *see also* 29 U.S.C. § 794(a). Thus, Maxwell must show that Defendants removed him from the work-release program *solely* because of his disability. *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1257 (7th Cir. 1997) ("The word *solely* provides the key: the discrimination must result from the handicap and from the handicap

alone."); *see also Washington v. Indiana High School Athletic Ass'n, Inc.*, 181 F.3d 840, 845 n.6 (7th Cir. 1999); *Knapp v. Northwestern Univ.*, 101 F.3d 473, 478 (7th Cir. 1996).

This is a more demanding standard than Title II's but-for standard. *See, e.g., U.S. v. Dyer*, 216 F.3d 568, 570 (7th Cir. 2000) ("'But for' causation is a very weak sense of causation" and "[i]t is poles apart from 'sole cause'"). And Maxwell's causation evidence for his Rehabilitation Act and Title II claims is the same. So his inability to establish a genuine dispute as to causation under Title II forecloses his ability to do so under the Rehabilitation Act. Accordingly, Defendants are entitled to summary judgment on Maxwell's claim for discrimination under the Rehabilitation Act.

One final point as to Maxwell's claims under the Rehabilitation Act and Title II of the ADA. Maxwell has not expressly asserted a claim for retaliation under either the ADA or the Rehabilitation Act. And the parties have not addressed any such claim in their summary judgment briefs. Still, Maxwell made some references in his complaint about IDOC's retaliation against him [DE 132, ¶¶ 19-20], and this warrants some attention.

As for the Rehabilitation Act, Maxwell certainly does not expressly assert a claim for retaliation under that Act, nor could he plausibly do so. To be sure, the Rehabilitation Act provides a basis for asserting a retaliation claim. Section 794(d) of the Act expressly incorporates the anti-retaliation provision of Section 503 of the ADA, 42 U.S.C. § 12203. *See* 29 U.S.C. § 794(d). But Maxwell brings his Rehabilitation Act claim only under Section 794(a); his complaint never references Section 794(d) [DE 132 at 10].

More important, even if Maxwell had attempted to state a retaliation claim under Section 794(d), that section applies only to a "complaint alleging employment discrimination . . . ." 29 U.S.C. § 794(d); *see also Dyrek v. Garvey*, 334 F.3d 590, 597 n.3 (7th Cir. 2003) ("the standards

15

set out in the ADA are used in determining whether a violation of the Rehabilitation Act occurred in the employment context") (citing 29 U.S.C. § 794(d)). And Maxwell has not alleged that IDOC or SBCRC discriminated against him *with respect to employment*. Nor could he. Maxwell wasn't an employee of those defendants. Far from it. He was an inmate in the IDOC system, and a participant in the SBCRC work-release program, but he was never an employee for either of those Defendants.

Whether Maxwell could have asserted a retaliation claim under the ADA is a closer call, but I find no basis for concluding that he has done so. Although the Seventh Circuit does not appear to have squarely addressed the matter, some federal appeals courts have found that a plaintiff can assert an ADA retaliation claim outside the employment context. *See Higdon v. Jackson*, 393 F.3d 1211, 1218 (11th Cir. 2004) ("We typically examine whether a plaintiff has established a prima facie case of retaliation under the ADA in the employment context, but the ADA also recognizes retaliation claims outside the employment context."); *Popovich v. Coyahoga County Court of Common Pleas*, 276 F.3d 808, 817 (6th Cir. 2002) (finding that jury must decide whether discontinuing plaintiff's custody hearing upon his refusal to waive disability claim could constitute retaliation under Section 12203 of the ADA); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999) (medical student established prima facie case of retaliation under the ADA by presenting evidence that medical school retaliated against him by giving him a failing grade and expelling him after he filed a grievance).

Maxwell's ADA claim, however, does not reference the ADA's anti-retaliation provision, Section 12203 under Title IV. Instead, his ADA claim is limited to his assertion that Defendants violated Title II of the ADA [DE 132 at 8]. Because neither party discussed a retaliation claim in their briefing, and plaintiff did not allege it as one of his specifically

16

delineated causes of actions, it is unnecessary for the Court to make any further findings on that issue.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by defendants Buss and SBCRC [DE 184] is **GRANTED**. In particular, the Court **GRANTS** summary judgment in favor of Defendants and against plaintiff Maxwell on (1) Maxwell's claim under Title II of the ADA; (2) Maxwell's claim for disability discrimination under Section 794(a) of the Rehabilitation Act; and (3) Maxwell's claim that Defendants are liable under Section 1983 for alleged violations of his rights under the Eighth and Fourteenth Amendments. Moreover, Maxwell's motion to strike [DE 193] is **DENIED**.

Because this ruling disposes of all the issues in this case, the clerk shall **ENTER FINAL JUDGMENT** in favor of defendants South Bend Work Release Center (now the South Bend Community Re-entry Center), and Edwin G. Buss, Commissioner of the Indiana Department of Correction, stating that plaintiff Valdez Maxwell is entitled to no relief on his complaint. The clerk shall treat this civil action as **TERMINATED**. All further settings in this action are hereby **VACATED**.

**SO ORDERED**.

ENTERED: October 3, 2011

    /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT